# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

—————————————

N⁰ 07-CV-01495 (JFB)(ETB)

—————————————

HOWARD TOOMER,

Plaintiff,

VERSUS

COUNTY OF NASSAU, NASSAU COUNTY CORRECTIONAL CENTER,
U.S. MARSHALS SERVICE, AND CORRECTIONS OFFICER CARR,

Defendants.

—————————————

**MEMORANDUM AND ORDER**
May 5, 2009

—————————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Howard Toomer ("plaintiff" or "Toomer") brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against defendants County of Nassau, Nassau County Correctional Center, Corrections Officer Carr (collectively, the "Nassau County defendants" or "County defendants"),[1] and the United States Marshals Service ("USMS"), alleging

arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued.'") (quoting *Hill v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)). As such, the Court will construe plaintiff's complaint against the Nassau County defendants as lodged against the County of Nassau, to the extent that Officer Carr is alleged to have violated plaintiff's constitutional rights in his official capacity as an employee of Nassau County. Since plaintiff does not allege that Officer Carr (or any other employee for that matter) acted beyond the scope of their employment with respect to the allegations in the complaint, the Court also construes plaintiff's claims to be brought against Officer Carr in his official capacity only.

---

[1] As a threshold matter, the Court notes that the Nassau County Correctional Facility, or any department thereof, is an "administrative arm[]" of the municipal entity, the County of Nassau, and thus lacks the capacity to be sued as a separate entity. *See, e.g., Caidor v. M & T Bank*, No. 05 Civ. 297, 2006 U.S. Dist. LEXIS 22980, at *6-*7 (N.D.N.Y. Mar. 27, 2006) ("'Under New York law, departments which are merely administrative

that defendants failed to protect him from an alleged assault by a fellow inmate on March 27, 2006, while he was in the custody of the Nassau County Correctional Center ("NCCC"), in violation of his constitutional rights.

Presently before the Court is the Nassau County defendants' motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.[2] For the reasons set forth herein, the County defendants' motion is granted, and plaintiff's Section 1983 claims against the County defendants are dismissed, with prejudice, for failure to exhaust the administrative remedy, as required by the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997(e) ("PLRA"). Also pending before the Court is the USMS' motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. As discussed below, the Court also grants the USMS' motion to dismiss for lack of jurisdiction and dismisses the claims against the USMS, with prejudice, because, among other things, plaintiff failed to exhaust his claims against

the United States, as required by the Federal Tort Claims Act.[3]

## I. FACTS[4]

The facts described below are taken from the complaint and plaintiff's and the County defendants' affidavits and exhibits. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to plaintiff, the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 54-55 (2d Cir. 2005).

---

[2] The Nassau County defendants filed the instant motion as a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Following the completion of discovery, however, the plaintiff and the Nassau County defendants agreed to convert the motion to one for summary judgment. The Court formally converted the County defendants' motion to a summary judgment motion (by Order, dated March 3, 2009), provided the requisite Notice to *Pro Se* Litigants under Local Civil Rule 56.2 (by Order, dated March 4, 2009), and an opportunity for the parties to make additional submissions after the conversion. Plaintiff, in fact, made such additional submissions that, along with the entire record, has been fully considered by the Court.

[3] "A court presented with a motion to dismiss under both Fed.R.Civ.P. 12(b)(1) and 12(b)(6) must decide the 'jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction.'" *Coveal v. Consumer Home Mortgage, Inc.*, No. 04 Civ. 4755 (ILG), 2005 U.S. Dist. LEXIS 25346, at *7 (E.D.N.Y. Oct. 21, 2005) (quoting *Magee v. Nassau County Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)); *see also Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (noting that a motion to dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction). Because the Court finds that the complaint warrants dismissal based on lack of jurisdiction, the Court does not address the various 12(b)(6) arguments made by the USMS, in the alternative.

[4] With respect to the USMS' motion to dismiss under Fed. R. Civ. P. 12(b)(1), the Court must assume the facts set forth in the complaint to be true and construe them in the light most favorable to plaintiff, the non-moving party. However, even taking all the facts alleged by plaintiff to be true, the Court grants the USMS' motion to dismiss, as discussed *infra*, and it may also "consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted).

Plaintiff pled guilty to one count of conspiracy to commit securities fraud and was sentenced on February 15, 2007 to a term of imprisonment of 33 months. (Decl. of James H. Knapp, Esq., Exh. A.) This sentence was revised to 31 months plus 10 days on April 22, 2008. (Decl. of James H. Knapp, Esq., Exh. B.) Plaintiff was admitted to the NCCC on February 21, 2006 and discharged on February 22, 2007. (Decl. of Ryan Singer, Esq., Exh. A.) Plaintiff was confined in the NCCC as a federal prisoner, pursuant to a contractual arrangement for housing prisoners between the USMS and Nassau County. (Compl., at Pt. IV.)

On March 27, 2006, plaintiff was assaulted by an inmate at the NCCC. Investigator Corporal Michael Coulon of the Nassau County Sheriff's Department assigned the investigation to Investigator Michelle Terry-Clark ("Terry-Clark") on the day of the incident. (Decl. of Ryan Singer, Esq., Exh. D.) On March 28, 2006, a signed Nassau County Police Department 32B Deposition was obtained from plaintiff, as well as a signed Medical Release form. (*Id*.)

When interviewed, plaintiff told Terry-Clark that on March 27, 2006, plaintiff "woke up during the middle of the night" because someone said, "he's snoring, I'm going to kick his ass." Around 7:00 a.m., court was called, the gates of plaintiff's cell and that of two other men were opened, and another inmate then came into his cell and "threw a punch at [him]." (*Id*.) They "tussled a little bit" and "grabbed eachother," and plaintiff believed that "the force of the punch made [his] chin hit the edge of the top bunk." (*Id.*) Prior to this attack, plaintiff claims that he made several complaints to Corrections Officer Carr that he was afraid of being attacked by other

inmates for snoring too loudly. (Affidavit of Plaintiff in Opposition, at 2.) Officer Carr and other officials failed to take any action other than moving plaintiff to another cell the day before the attack occurred. (*Id*.)

After the attack, plaintiff was sent to the medical unit and was seen by a doctor who cleaned the cut under his chin. (Decl. of Ryan Singer, Esq., Exh. D.) A NCCC Medical/Surgical Transfer Form to the Nassau University Medical Center was initiated for sutures to close the laceration he sustained on his chin. (*Id*.) Plaintiff at that time refused to go to the hospital because he "had not been to court since March 2, 2006 and [his] Attorney was coming from a great distance." (*Id*.) Photos were taken of his injury. (*Id*.) He disclosed to investigators that he knew the name of his attacker, but did not want to disclose such information or press charges until he felt safe. (*Id*.) On March 28, 2006, plaintiff was moved to a new housing location. (*Id*.) Thirteen potential inmate witnesses were interviewed. Only one inmate saw what happened and stated, "he got beaten up because he was snoring and the inmate that did it left this morning." (*Id*.)

On April 3, 2006, Terry-Clark and Investigator Garcia re-interviewed plaintiff, who told them that he was now willing to give up the inmate's name who had assaulted him in his previous cell. (*Id*.) In a written statement, he told the investigators that the inmate was known as "pretty Ricky" and that he wanted him criminally charged with the alleged assault. (*Id*.) Plaintiff identified the alleged attacker from a series of photos on April 6, 2006. (*Id*.)

On April 24, 2006, plaintiff met with Nassau County District Attorney Robert

Cavallo with regard to the investigation of the other inmate's alleged conduct. (*Id.*) On May 11, 2006, a memo from Cavallo ("Cavallo") to the Sheriff's Bureau of Investigation stated, "[b]ased on our review, it does not appear that a criminal prosecution would be appropriate. Consequently, we are closing our file and referring this matter to you for whatever administrative/disciplinary action you may deem appropriate." (*Id.*) Investigator Terry-Clark then recommended that the case be closed as "[s]ustained without charges." (*Id.*) She based her conclusions on the following: 1) visible injuries were noted, 2) Toomer identified his attacker in a series of photos, 3) only one inmate out of the potential inmate witnesses stated that Toomer was hit because he was snoring, and "the person that did it was discharged this morning 3-28-06," and 4) the District Attorney was not going forward with the filing of criminal charges. (*Id.*)

Based upon a review of the docket sheet, and the changes of addresses contained therein, plaintiff had been transferred to the Suffolk County Correctional Center by the time he filed this lawsuit in April 2007. He completed serving his federal sentence in mid-2008. (*See* Docket Entries #55 and #74.)

## II. PROCEDURAL HISTORY

On April 9, 2007, *pro se* plaintiff filed the instant action. The Nassau County defendants moved to dismiss on April 17, 2008. Plaintiff submitted his opposition on September 28, 2008, and the County defendants replied on October 20, 2008. Defendant USMS filed its motion to dismiss on May 5, 2008, to which plaintiff responded on July 30, 2008 and the USMS replied on August 7, 2008.

On March 3, 2009, the Court confirmed that the Nassau County's motion would be converted to one for summary judgment pursuant to Fed. R. Civ. P. 56 and provided plaintiff a final opportunity to supplement his opposition papers. On March 4, 2009, in an addendum to the March 3, 2009 Order, the Court provided to plaintiff a copy of the Notice to *Pro Se* Litigants, pursuant to Local Rule 56.2. On March 16, 2009, plaintiff requested a twenty-day extension to submit additional documentation, which the Court granted on that same day. On April 7, 2009, plaintiff filed his opposition papers to the converted motion for summary judgment. The County defendants filed their response thereto on April 20, 2009, and oral argument was heard on the pending motions on April 24, 2009. The Court has fully considered the submissions of the parties.[5]

## III. STANDARD OF REVIEW

### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113

---

[5] By Order dated September 17, 2007, the Court denied plaintiff's application for appointment of counsel. To the extent that plaintiff renews that motion in response to defendants' motions, that request is again denied. Based upon the submissions to the Court from plaintiff, it is clear that he is more than capable of understanding, and responding to, the factual and legal issues raised by defendants' motions. Plaintiff's *pro se* status has not, in any way, hindered his ability to fully present his position to this Court. Thus, the appointment of counsel is completely unnecessary under the circumstances of this case.

(2d Cir. 2000). In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). Moreover, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* (citations omitted). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). The Court may also raise the issue of subject matter jurisdiction at any time *sua sponte. See, e.g., McGinty v. New York*, 251 F.3d 84, 90 (2d Cir. 2001) ("Whether a federal court has subject matter jurisdiction is a question that may be raised at any time . . . by the court *sua sponte*.") (internal quotation marks omitted).

Moreover, as the Second Circuit recently emphasized in *Sealed Plaintiff v. Sealed Defendant*, "[o]n occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally . . . . This obligation entails, at the very least, a permissive application of the rules governing the form of pleadings . . . . This is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated. Accordingly, the dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." 537 F.3d 185, 191 (2d Cir. 2008) (citations and quotation marks omitted); *see Sharpe v. Conole*, 386 F.3d 483, 484 (2d Cir. 2004); *see*

*also Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 145-46 (2d Cir. 2002) (holding that when plaintiff is appearing *pro se*, the Court shall "'construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'") (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (alterations in original)).

## B. Rule 56(c)

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as

to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecommc'ns., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

## IV. DISCUSSION

### A. Claims Against the County Defendants

#### 1. Exhaustion Under the PLRA[6]

In the civil rights complaint filed in this action, *pro se* plaintiff claims that his constitutional rights were violated by the County defendants when they failed to take appropriate measures to protect him from an attack by an inmate, while plaintiff was confined as a federal prisoner in the NCCC. The County defendants argue that plaintiff's claim against them is barred by the PLRA. (County Defendants' Mem. of Law, at 3.) The Court agrees.

"In an effort to address the large number of prisoner complaints filed in federal court, Congress enacted the [PLRA]. Among other reforms, the PLRA . . . requires prisoners to exhaust prison grievance procedures before filing suit." *Jones v. Bock*, 549 U.S. 199, 202 (2007) (citations omitted). "The Supreme Court has held that 'the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Macias v. Zenk*, 495 F.3d 37, 40 (2d Cir. 2007). The exhaustion provision of the PLRA provides:

---

[6] As an initial matter, the Court notes that, although plaintiff is no longer incarcerated, it is clear from the federal complaint that he was incarcerated at the time that he filed this lawsuit. Thus, plaintiff is subject to the exhaustion requirements under the PLRA for the claims filed in this lawsuit. *See Berry v. Kerik*, 366 F.3d 85, 87-88 (2d Cir. 2003); *Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999).

No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. Importantly, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211 (citation omitted).

Specifically, to properly exhaust administrative remedies, prisoners must "complete the administrative review process in accordance with the applicable procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006); *accord Macias*, 495 F.3d at 43. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. In this case, the NCCC Inmate Handbook, in its section entitled "Grievance Procedure," details the following remedial scheme:

The Inmate Greivance Program provides the inmate population with a mechanism to voice complaints in a meaningful fashion. Resolution of inmate complaints in a timely manner is the goal of the program. Informal measures may be utilized before requesting an Inmate Greivance form. Inmates filing a formal grievance shall follow the below listed procedures.

A GRIEVANCE is a written inmate complaint concerning either written or unwritten facility policies, procedures, rules, practices, programs or the action or inaction of any person within the facility.

NON-GRIEVABLE MATTERS: Grievances regarding dispositions, surcharges, and sanctions resulting from disciplinary hearings, administrative segregations decisions, issues that are outside the authority of the chief administrative officer to control, or complaints pertaining to an inmate other than the inmate actually filing the grievance are not grievable and will be returned to the inmate by the Grievance Coordinator. Such grievances may not be appealed to the chief administrative officer or the Citizens' Policy and Complaint Review Council.

You may attempt to resolve your complaint in an informal manner with the housing area officers and/or supervisors prior to filing a written

(formal) grievance. If the housing area officers and/or supervisors are unable to resolve your complaint, or if you do not wish to attempt to resolve your complaint in an informal manner, you may access the grievance process by completing a Grievance form. Grievance forms are available in the Inmate Law Library and during Inmate Council meetings. The forms are also maintained in the housing area officer's station. You will be given a grievance form upon request. Note that if you attempt to resolve your complaint in an informal manner and later file a formal grievance, the time utilized in attempting to resolve the complaint informally will not be calculated into the grievance timetable.

You must file a grievance within five (5) days of the date of the act or occurrence leading to the grievance.

(Decl. of Ryan Singer, Esq., Exh. B.) Plaintiff received a copy of this Handbook and does not take the position that he did not or was uninformed of these policies. (Decl. of Liora M. Ben-Sorak, Esq., Exh. A.) The County defendants argue that, because plaintiff complains of the "the action or inaction of any person within the facility," he was required by the NCCC Handbook to file a formal Grievance and that his time to do so lapsed on April 1, 2006, or five days after the alleged assault.

In response, plaintiff does not dispute that he did not file a formal prisoner grievance procedure. Instead, he argues that the subject of his complaint was not a "grievable issue" and that it was "reported to and investigated by Sheriff's Bureau of Investigation." (Compl. at Pt. II.)[7] Plaintiff's argument seems

[7]    Plaintiff claims that he never received notification that the investigation was closed. (Pl.'s Local 56.1 Statement of Facts, at 5.) However, he admits that he never proceeded to file a formal Grievance or inquired into the status of the investigation such that he could file a formal grievance after its closing. He also never complained to the housing area officers and/or supervisors. These actions further indicate that plaintiff at best viewed his complaint as simply a non-grievable issue (based upon his own misguided interpretation of the NCCC regulations, rather than what anyone told him), and not one that would be pursued informally first and then formally afterwards. Moreover, to the extent that plaintiff argues that his complaint to Officer Carr prior to the attack constituted an informal complaint to housing area officers (*See* Pl.'s Local 56.1 Statement of Facts, at 16), such a complaint would have had to have been followed by a formal complaint within five (5) days from the time that such an informal complaint was made. Plaintiff clearly failed to follow up with any such written complaint. In short, the completion of the criminal investigation of the inmate was irrelevant to plaintiff's ability to utilize the grievance procedures against prison officials for their alleged conduct in failing to protect him. There is absolutely no evidence that anyone told plaintiff anything to the contrary, and there is no justification or excuse for plaintiff's failure to follow the clear grievance procedures available against prison officials, despite the criminal investigation of the inmate. *See, e.g., Johnson v. Killian*, No. 07 Civ. 6641 (LTS) (DFE), 2009 WL 1066248, at *5 (S.D.N.Y. Apr. 21, 2009) ("Plaintiffs also point to no existing regulations or law, or to any evidence of actions by any prison

to be premised on the theory that he was attacked by a fellow inmate and that "complaints pertaining to an inmate other than the inmate actually filing the grievance are not grievable," according to the NCCC Handbook. Although it is true that complaints regarding other inmates do not appear grievable, plaintiff is not suing another inmate in this action. Here, plaintiff alleges that the negligence of the County defendants resulted in his injuries from the underlying attack because of their alleged failure to protect him. Such a grievance against prison officials because of their alleged negligence in failing to protect the plaintiff is clearly different from any complaints about an inmate's behavior, which is non-grievable. No grievance, whether formal or informal, was ever filed or pursued with respect to these allegations against the County prior to the initiation of this lawsuit. Moreover, even assuming *arguendo* that plaintiff's complaint to the Sheriff's Bureau of Investigation could constitute an informal grievance, the subject of the investigation by the Sheriff's Bureau of Investigation was clearly the alleged underlying attack and whether the alleged attacker would be criminally prosecuted or disciplined, and it had nothing to do with any alleged wrongful conduct by prison officials. There is not a scintilla of evidence in the entire investigation file, including in plaintiff's signed supporting depositions, or in any other documents submitted to the Court by plaintiff, of any complaints by plaintiff regarding the County's negligence or reference thereto. In fact, the Court confirmed

official that would have led [plaintiffs] to reasonably believe that the administrative grievance that was filed in 2005 excused them from filing an administrative grievance in 2007[.]").

with plaintiff at oral argument that, at no time during this investigation following the attack, did he make any complaint against any prison official, as opposed to the actions of the inmate in attacking him.

The Court therefore concludes that plaintiff did not file a grievance in proper compliance with NCCC policy. *See, e.g., Snyder v. Whittier*, No. 9:05 Civ. 01284, 2009 WL 691940, at *8 (N.D.N.Y. Mar. 12, 2009) (finding non-exhaustion against a particular defendant where "[t]he record now before the court reflects that while plaintiff has articulated complaints regarding the Whittier incident on several occasions, both verbally and in writing, none referenced [that particular defendant]."); *Percinthe v. Julien*, No. 08 Civ. 893, 2008 WL 4489777 at *2 (S.D.N.Y. Oct. 4, 2008) ("A]n inmate has not exhausted administrative remedies against a person – not named in a grievance – whom the inmate later claims 'to have been aware of . . . systemic problepis [sic] and who failed to correct them.'") (citation omitted). Although plaintiff was not required to name every specific defendant in his grievance against whom he now brings this action, see *Jones*, 549 U.S. at 218, he was required by the NCCC grievance procedure to make a formal, or informal followed by formal, complaint of the prison officials' acts of which he now complains. However, plaintiff plainly did not satisfy this requirement.

The analysis, however, does not end there. The Second Circuit has formulated a three-part test in examining failure to exhaust under the PLRA:

> Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether

administrative remedies were in fact available to the prisoner. The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements.

*Macias*, 495 F.3d at 41 (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004) (internal quotation marks and citations omitted)).[8]

Applying that standard to the instant case, this Court concludes that there is no basis for plaintiff to overcome his failure to exhaust. First, as noted *supra*, there is no question that administrative remedies were in fact available to plaintiff under the NCCC Grievance Procedure regarding any negligent acts by prison authorities in failing to protect him from other inmates. Second, there is no evidence whatsoever that prison authorities acted in a way as to render the administrative remedy unavailable or engaged in any conduct such that they should be estopped from asserting this affirmative defense of non-exhaustion. Contrary to petitioner's reliance on *Lane v. Doan*, 287 F. Supp. 2d 210 (W.D.N.Y. 2003) and related cases, this case is not one where plaintiff was led to believe incorrectly by prison officials that his complaint was not a grievance matter, or where prison authorities obstructed his pursuit of administrative exhaustion or ignored his complaints. Although his complaint against his alleged attacker may have been non-grievable, his complaint against the County defendants certainly was, and there is no allegation or evidence that prison officials told him otherwise. Plaintiff's conclusory assertion that he "was led to believe his

---

[8] There is some speculation as to whether the *Hemphill* test survives following the Supreme Court's decision in *Woodford*. *See, e.g., Snyder v. Whittier*, No. 9:05 Civ. 01284, 2009 WL 691940, at *7 n.9 (N.D.N.Y. Mar. 12, 2009); *Amador v. Superintendents of Dep't of Corr. Servs.*, No. 03 Civ. 0650 (KTD) (GWG), 2007 WL 4326747, at *6-*7 (S.D.N.Y. Dec. 4, 2007). In *Macias*, the Second Circuit did not address the impact of

*Woodford* on the third prong of the *Hemphill* test, *i.e.,* whether administrative procedures may be confusing such that "a reasonable interpretation of prison grievance regulations may justify an inmate's failure to follow procedural rules to the letter." 495 F.3d at 43 n.1 (internal citations omitted). However, the Second Circuit recently acknowledged the "special circumstances" exception in *Davis v. New York*, No. 07-3262-pr, 2009 WL 424151, at *1 (2d Cir. Feb. 20, 2009), and this Court need not decide whether *Woodford* narrowed *Hemphill* because, as discussed in detail *infra*, plaintiff clearly has not satisfied the standard under *Hemphill*.

Complaint was not grievable issue because reported to and investigated by Sheriff's Bureau of Investigation," (Pl's. 56.1 Local Statement of Facts, at 7), without any specific allegations or evidence of how defendants led plaintiff to incorrectly believe such, is insufficient to satisfy the second prong of the *Hemphill* inquiry. The Court has given plaintiff every opportunity to explain how anyone misled him, and plaintiff has simply put forth no evidence to support any such claim. In short, the Court finds that plaintiff has put forth no evidence that any prison officials gave any erroneous or misleading instructions that any complaint against prison officials from the inmate attack was non-grievable or that he must wait for the conclusion of any criminal investigation of the inmate's conduct before filing a complaint against the prison officials for their alleged negligence in failing to protect him.

In addition, the Court has taken care to examine whether any special circumstances existed to justify the prisoner's failure to comply with the procedural requirements. Under the third prong of the *Hemphill* test, among the circumstances that may be considered "special" include those where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute is not grievable. *See Giano v. Goord*, 380 F.3d 670, 676-77 (2d Cir. 2004). After careful review of the record, as well as oral argument on this issue, the Court finds that no such circumstances exist in this case. In this respect, the Court does not find that the procedural requirements laid out by the NCCC were so confusing such that even an uncounselled inmate could reasonably believe that a complaint against his alleged attacker was tantamount to a complaint against the County or one of its officers. *See Hemphill*, 380 F.3d at 690. Indeed, plaintiff cannot claim that he was unaware of, or did not understand, the proper filing procedure for grievances with respect to prison officials' acts. In fact, plaintiff has on previous occasion filed a formal NCCC Grievance Form. On February 21, 2006, prior to the attack at issue in this case, plaintiff filed a Grievance form with the NCCC regarding his attempts to "change [his] religion from Other to Protestant" and that he would like to attend church services and was "being denied access to [his] religious rights." (Decl. of Ryan Singer, Esq., Exh. C.) In short, it is clear from the NCCC regulations that negligence by prison officials in protecting an inmate and preventing attacks by other inmates is a grievable matter, and there is no reasonable interpretation of those regulations that would support any other conclusion. *See, e.g, Jones v. Carroll*, 536 F. Supp. 2d 507, 510 (D. Del. 2008) (in Section 1983 action brought by former inmate against prison employees for failing to protect him from an attack by another inmate, summary judgment due to inmate's failure to exhaust under the PLRA was warranted because (1) inmate was aware of the grievance procedure, and (2) he took no action with regard to the grievance procedure because of his mistaken "belief" that the grievance procedure was not a remedy "in this situation"); *Gray v. Murry*, No. 99 Civ. 2767 (WHP), 2001 WL 826088, at *3 (S.D.N.Y. July 19, 2001) (granting motion to dismiss for failure to exhaust because "[a]lthough a grievance directly challenging the decision or proceeding on the disciplinary charge would not be grievable, [plaintiff's] complaint that defendants failed to protect him from attack by another inmate – the subject of this action - would be"); *see also Hernandez v. Coffey*, No. 99 Civ. 11615 (WHP), 2003 WL 22241431, at *4 (S.D.N.Y. Sept. 29, 2003) (in Section 1983

lawsuit against corrections officers for an alleged assault, dismissal for failure to exhaust warranted where "it is evident that he was not hindered from reporting the alleged incident because he wrote to DOCS officials and the District Attorney's office complaining about the attack at Downstate.")

Finally, petitioner's attempt to argue that informal procedures (to the extent that they are not permitted by NCCC policy to address a particular complaint) – namely, his report to the Sheriff's Bureau of Investigation – are sufficient to satisfy the PLRA's exhaustion requirement is similarly unavailing. First, this argument still fails, as noted above, because the informal complaint never referenced any negligence by the County defendants (as opposed to the actions of the inmate). In any event, even assuming *arguendo* that plaintiff did properly allege the County's negligence, plaintiff's assertion that informal mechanisms provide sufficient notification to prison authorities of his complaint is not supported by the law.[9] The Second Circuit has clearly stated that "[r]egardless of whether his tort claims or informal complaints put the prison officials on notice of his grievance' in a *substantive* sense,' *Johnson* makes clear that

to satisfy the PLRA a prisoner must also *procedurally* exhaust his available administrative remedies. *Johnson*, 380 F.3d at 697-98." *Macias*, 495 F.3d at 44 (emphasis in original). Even if notice to the County had been provided, "notice alone is insufficient because "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance," and "[t]he prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Id*. (quoting *Woodford*, 548 U.S. at 95).[10]

In sum, under these circumstances, it is apparent that the County had no prior opportunity to address the subject matter of plaintiff's claims in this litigation and that plaintiff failed to adequately exhaust his

---

[9] In this vein, plaintiff relies on case law that has since been superseded by Supreme Court holdings, including *Braham v. Clancey*, 425 F.3d 177, 183 (2d Cir. 2005). This also includes the dicta in *Marvin v. Goord*, 255 F.3d 40, 43 n.3 (2d Cir. 2001), discussing possible exhaustion through informal channels, which is no longer applicable following *Woodford*. Even prior to *Woodford*, however, "[c]ontrary to [plaintiff's] suggestion, *Marvin* [did] not imply that a prisoner has exhausted his administrative remedies every time he receives his desired relief through informal channels." *Ruggiero v. County of Orange*, 467 F.3d 170, 177-78 (2d Cir. 2006).

[10] In reaching this decision, the Court is aware of the Second Circuit's guidance in *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004). However, this is not a situation where plaintiff raised any complaints about prison employees in a separate complaint about an inmate. In fact, as noted *supra*, conduct by prison officials is not mentioned in any manner in connection with plaintiff's reports to the Sheriff's Bureau of Investigation or anyone else for that matter. In any event, even assuming *arguendo* it were mentioned, plaintiff would not have been justified in relying upon those reports, rather than filing a separate grievance in accordance with the clear process established by NCCC regulations. Finally, it would defy logic in this case to suggest that plaintiff's complaints about the inmate's attack on him (and the criminal investigation of the inmate) would somehow have put the prison officials on notice that their conduct was being questioned and grieved such that it could be construed as "afford[ing] corrections officials time and opportunity to address complaints internally." *Porter*, 534 U.S. at 525.

administrative remedies. These remedies were available to plaintiff, and defendants did nothing that would result in their being estopped from raising the defense. Moreover, there is no other basis or "special circumstances" under *Hemphill* to excuse the plaintiff's failure to exhaust. *See, e.g., Davis v. New York*, No. 07-3262-pr, 2009 WL 424151, at *2 (2d Cir. Feb. 20, 2009) ("[B]ecause administrative remedies were, in fact, available to [plaintiff], defendants are not estopped from raising their exhaustion defense. Further, because [plaintiff] failed to avail himself of the available remedies and to plead 'special circumstances' warranting an exception from the exhaustion requirement, we conclude that his excessive force claim was properly dismissed."). Accordingly, the Court finds that plaintiff's claims against the County defendants are barred by the PLRA.

The only remaining issue is whether the dismissal should be with prejudice or without prejudice. Although a dismissal for failure to exhaust administrative remedies may be without prejudice if it is a "temporary, curable procedural flaw," the Second Circuit has made clear that dismissal under the PLRA for failure to exhaust can be with prejudice "where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004) (quotations and citation omitted); *see also Richardson v. Darden*, No. 07 Civ. 6594 (BSJ), 2009 WL 414045, at *2 (S.D.N.Y. Feb. 17, 2009) (dismissing with prejudice for failure to exhaust under PLRA); *Leacock v. New York Health Hosp. Corp.*, No. 03 Civ. 5440 (RMB) (GWG), 2005 WL 483363 (S.D.N.Y. Mar. 1, 2005) ("Because [plaintiff] had an opportunity to exhaust her claim and can no longer do so now, the

dismissal should be with prejudice."). That is certainly the situation here. As discussed in detail above, plaintiff had many months to pursue his grievance against prison officials for their alleged failure to protect him and, thus, had ample opportunity to use the administrative procedures. Moreover, those procedures are no longer available to him because he is no longer incarcerated. *See, e.g.*, *Leacock v. New York City Health Hosp. Corp.*, No. 03 Civ. 5440 (RMB) (GWG), 2005 WL 483363, at *9 (S.D.N.Y. Mar. 1, 2005) ("Because [plaintiff] had an opportunity to exhaust her claim and can no longer do so now, the dismissal should be with prejudice."). Therefore, the Court concludes, under the circumstances of this case, dismissal of the claims against the County defendants, with prejudice, is warranted.

### B. Claims Against the USMS[11]

Plaintiff also sues the USMS for housing plaintiff with state prisoners in the NCCC, in violation of his constitutional rights. (Compl., at Pt. V.) Despite the complaint's caption asserting only claims under 42 U.S.C. § 1983, the Court interprets the complaint to raise the strongest argument possible, which, in this case, is not a Section 1983 action with respect to defendant USMS. First, it is well settled that the United States has sovereign immunity. *United States Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992). Thus, the Court agrees with the USMS that no claim against it or the United States may lie for a constitutional tort. (*See* USMS Mem. of Law in Support, at 9-10.) In any event, Section 1983 is not a vehicle for suits against the federal government or an agency therof. *Accord Hightower v. United States*, 205 F. Supp. 2d 146, 154 n.4 (S.D.N.Y. 2002) ("Although plaintiff purports to invoke Section 1983 and the New York Constitution as bases for his constitutional claims . . . Section 1983 and the New York State Constitution only permit suits against state actors acting under color of state law, and not against the federal government or federal employees acting under federal law."). The Court thus construes the complaint to allege against the USMS a claim of tortious injury under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 1346(b) *et seq.* Furthermore, the Court considers plaintiff's request for leave to amend to assert a claim under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), but denies such request as futile, as discussed *infra*.

The USMS moves to dismiss plaintiff's claims for lack of subject matter jurisdiction for failure to meet the administrative remedies exhaustion requirement set forth under the Federal Torts Claims Act ("FTCA"). For the reasons set forth below, the Court concludes that it lacks subject matter jurisdiction over any claim under the FTCA and, thus, dismisses the claims against the USMS (or the United States as liberally construed) without prejudice.

### 1. Administrative Exhaustion

Defendant USMS first argues that plaintiff's claims should be dismissed

---

[11] As an initial matter, the Court concludes that any requests by plaintiff for declaratory and injunctive relief against the USMS or the United States regarding his place or conditions of confinement (Compl., at Pt. V) are denied as moot, since plaintiff is no longer incarcerated. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."). To the extent that plaintiff also seeks a declaratory judgment holding that the "commingling" of state and federal prisoners is unconstitutional (*id.*), such a constitutional challenge is, *inter alia*, no longer "presented in the context of a specific live grievance," *Golden v. Zwickler*, 394 U.S. 103, 110 (1969), and is, in any event, without merit. *See Olim v. Wakinekona*, 461 U.S. 238, 245-47 (1983). However, the Court, construing the *pro se* complaint liberally, assumes that plaintiff, in addition to seeking monetary damages against the County defendants, is also seeking monetary damages against the United States, based upon the conduct of the USMS, under the FTCA. In other words, plaintiff's complaint, liberally construed, further seeks "money judgement [sic]: compensatory, exemplary [sic], and punitive damages in amount of $3,000,000.00" from all of the defendants, including the USMS. (*See* Compl., at Pt. V.)

pursuant to Fed. R. Civ. P. 12(b)(1).[12] Specifically, the USMS argues that plaintiff has failed to exhaust administrative remedies and, thus, the court lacks subject matter jurisdiction under the FTCA to adjudicate plaintiff's claim. (USMS' Memorandum of Law in Support, at 7.) The Court agrees and dismisses plaintiff's complaint against the United States, pursuant to Fed. R. Civ. P. 12(b)(1), for failure to exhaust.

The FTCA provides, in relevant part:

> Subject to the provisions of chapter 171 of this title [28 U.S.C. §§ 2671 *et seq.*], the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). By enacting the FTCA, Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees. *See id.* "The waiver of sovereign immunity under the FTCA, 28 U.S.C. § 1346(b), is strictly limited to suits predicated upon a tort cause of action cognizable under state law and brought in accordance with the provisions of the FTCA," *Finelli v. Drug Enforcement Agency*, No. 92 Civ. 3463 (PKL), 1993 WL 51105, at *5 (S.D.N.Y. Feb. 24, 1993), and this constitutes the exclusive remedy for torts committed by federal employees in the course of their duties. *See, e.g., James v. United States*, No. 99 Civ. 4238 (BSJ), 2000 WL 1132035, at *1 (S.D.N.Y. Aug. 8, 2000); *see also Olmeda v. Babbits*, No. 07 Civ. 2140 (NRB), 2008 WL 282122, at *5 (S.D.N.Y. Jan. 25, 2008); *Finelli*, 1993 WL 51105, at *1 ("While this provision does not apply to suits for violation of federal constitutional or statutory rights, it is well settled that it does provide Government employees with absolute immunity against claims of common-law tort." (citing *Rivera v. United States*, 928 F.2d 592, 608 (2d Cir. 1991)). Thus, to the extent that plaintiff alleges that the United States, or any agency thereof, committed common law torts against plaintiff, any such claim is governed by the FTCA.

The Supreme Court has clearly stated, in interpreting the statutory text of the FTCA, that "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v.*

---

[12] The USMS argues that, as a threshold matter, it is not a proper defendant under the FTCA. (USMS' Memorandum of Law, at 6-7.) The Court agrees. Any tort claim against the USMS, an agency of the federal government, can only be maintained against the United States under the FTCA. *See* 28 U.S.C. § 2679(a). However, even if the Court substitutes the United States for the USMS for the purposes of this analysis, *see, e.g., Dockery v. Tucker*, No. 97 Civ. 3584, 2006 WL 5893295, at *7 (E.D.N.Y. Sept. 6, 2006), the claims against the United States must be dismissed due to lack of jurisdiction for the other reasons discussed *infra*.

*United States*, 508 U.S. 106, 113 (1993); *accord Robinson*, 21 F.3d at 509. Specifically, the FTCA requires that claimants first present their claims to the appropriate federal agency within two years of accrual, and their claims must be denied in writing before claimants may file suit in federal court. *See* 28 U.S.C. §§ 2401(b), 2675(a). "The administrative exhaustion requirement derives from a cardinal principle of law – that the United States, as sovereign, is immune from suits in the courts of law." *Mosseri v. F.D.I.C.*, Nos. 95 Civ. 723 (BJS), 97 Civ. 969 (BSJ), 1999 WL 694289, at *7 (S.D.N.Y. Sept. 8, 1999). Failure to comply with this requirement is jurisdictional and results in dismissal of the suit. *See McNeil*, 508 U.S. at 113 ("The FTCA bars claimants from bringing suits in federal court until they have exhausted their administrative remedies. Because petitioner has failed to heed that clear statutory command, the District Court properly dismissed his suit."); *see also Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) ("The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in district court. This requirement is jurisdictional and cannot be waived."); *Adams by Adams v. United States Dep't of Housing and Urban Dev.*, 807 F.2d 318, 319-20 (2d Cir. 1986); *Willis v. United States*, 719 F.2d 608 (2d Cir. 1983); *Keene Corp. v. United States*, 700 F.2d 836, 841 (2d Cir. 1983); *Rawlins v. M&T Mortgage Corps.,* No. 05 Civ. 2572 (RCC), 2005 WL 2143334, at *4 (S.D.N.Y. Sept. 1, 2005); *Harrison v. Lutheran Med. Ctr.*, No. 05 Civ. 2059 (CBA), 2005 WL 1801626, at *2-*3 (E.D.N.Y. July 27, 2005); *Liebers v. St. Albans Med. Ctr.*, No. 99 Civ. 6534 (JG), 2000 WL 235717, at *1 (E.D.N.Y. Feb. 25, 2000); *Solomon v. United States*, 566 F. Supp. 1033, 1035 (E.D.N.Y. 1982).

In the instant case, plaintiff has failed to exhaust his claims, as required by the FTCA. The record is clear, and plaintiff conceded at oral argument, that he has not filed an administrative claim with the USMS or any federal agency. (Declaration of Gerald M. Auerback, dated May 1, 2008, at ¶¶ 4-5.)[13] Indeed, there is no indication or evidence in the pleadings or documents uncovered through discovery in this action, of a claim that plaintiff has filed with the USMS. Thus, the Court finds that plaintiff has failed to properly present an administrative tort claim to the appropriate agency prior to filing this lawsuit and exhaust the administrative remedy.[14] *See,*

---

[13] When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. *See, e.g., Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 n.6 (2d Cir. 2001); *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986); *Flanagan v. United States*, 430 F. Supp. 2d 106, 113 (W.D.N.Y. 2006) ("Although Plaintiff asserts that the independent contractor exception to the FTCA is inapplicable here because Plaintiff alleges GSA, not the contractor, was negligent, it is well-settled that the court may look beyond the pleadings to other evidence in the record to determine if subject matter jurisdiction exists.") (collecting cases); *accord Wilson v. Federal Bureau of Prisons*, No. 07 Civ. 00682 (WDM) (MEH), 2007 WL 4570553, at *3 (D. Colo. Dec. 21, 2007) ("As plaintiff did not respond to this affidavit with any demonstration that he had fully exhausted his administrative remedies, Magistrate Judge Hegarty concluded that jurisdiction under the FTCA was not appropriate. I agree with Magistrate Judge Hegarty on this issue.") (citation omitted).

[14] Moreover, plaintiff's claim against the United States accrued at the time of his alleged injury, since the FTCA claim ordinarily accrues at the

*e.g., Olmeda*, 2008 WL 282122, at *5 (dismissing claim as barred by the FTCA for failure to exhaust where "neither the ATF nor the FBI has any record of an administrative tort claim filed by [plaintiff] (or an authorized representative of [plaintiff])"); *Liebers*, 2000 WL 235717, at *1 (dismissing claim under the FTCA where "[t]he defendant has submitted an affidavit from a control clerk at the Department of Veterans Affairs who searched the VA's records and could find no administrative claim filed by [plaintiff]"); *Marsden v. Fed. Bureau of Prisons*, 856 F. Supp. 832, 836 (S.D.N.Y. 1994) ("It is undisputed that plaintiff has not filed an administrative tort claim . . . . Accordingly, this court lacks jurisdiction over the subject matter of this complaint to the extent it alleges a common law tort against the federal defendants.").

Accordingly, the Court dismisses plaintiff's claims against the USMS for lack

_____

time of injury. *See Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998). Therefore, any claim had to be presented to the appropriate agency within two years of such injury, see 28 U.S.C. § 2401(b), or by March 27, 2008. Thus, the claims that are the subject of this lawsuit – arising from the alleged March 27, 2006 inmate fight – are now time-barred under 28 U.S.C. § 2401(b) because plaintiff failed to present his claim to the USMS within two years of its accrual. Although the Second Circuit has recognized that the doctrine of equitable tolling could apply with respect to FTCA claims under certain limited circumstances, *see Valdez v. United States*, 518 F.3d 173, 182-85 (2d Cir. 2008), no such circumstances exist here. Plaintiff has failed to demonstrate any basis for equitable tolling. Given the plaintiff's inability to exhaust at this juncture, as well as the other incurable jurisdictional defects discussed *infra*, dismissal of these claims with prejudice is warranted.

of subject matter jurisdiction due to failure to exhaust under the FTCA, pursuant to Fed. R. Civ. P. 12(b)(1).

## 2. Other Jurisdictional Defects

The USMS further argues that, even if Toomer had properly sued the United States and properly exhausted his administrative remedies, his claims against the United States still fall outside this Court's jurisdiction because (1) the discretionary function exception to the FTCA bars claims challenging the USMS's decision to place Toomer at the NCCC, (2) liability cannot arise under the FTCA because plaintiff has not alleged a cause of action that is analogous to a cause of action against a private citizen that is recognized in New York State, and (3) the FTCA has a long-standing independent contractor exception to the United States' waiver of sovereign immunity. (USMS' Memorandum of Law, at 9.) As set forth below, the Court agrees and concludes that these grounds provide an alternative basis for dismissal with prejudice for lack of jurisdiction.

First, plaintiff's claims against the USMS are barred by the FTCA's discretionary function exception. As the Second Circuit has articulated, this exception bars suit when two conditions are satisfied: "(1) the acts alleged to be negligent must be discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in 'considerations of public policy' or susceptible to policy analysis.'" *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (quoting *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991)). Those conditions are met in the instant case. Specifically, it is clear from the

plaintiff's complaint, and was confirmed at oral argument, that he has attempted to sue the USMS, not because of any act of specific negligence on its part in connection with what happened at the NCCC, but rather simply because of their decision to enter into an agreement with the NCCC to house him and other federal prisoners. Such a decision clearly involves an element of judgment or choice, which is not specifically prohibited by statute or regulation, and is grounded in considerations of public policy. Thus, this exception applies and bars plaintiff's lawsuit against the USMS. As one court has explained:

> Turning to the instant matter, first, the USMS's decision to contract with [the Virginia Peninsula Regional Jail ("VPRJ")] clearly involved judgment or choice and was not "specifically proscribed'" as the relevant statutory provision provides that the USMS, on behalf of the Attorney General, "may contract . . . for the imprisonment, subsistence, care and proper employment" of federal prisoners. 18 U.S.C. § 4002 (emphasis added). Thus, the first prong of the discretionary function test is met. Second, when deciding whether to contract with a state facility, the United States "had to weigh concerns of expense, administration, payment, access to the premises, and a veritable plethora of factors before arriving at the decision to engage" the VPRJ. Likewise,

the requisite balancing of policy factors is plainly evident from the statute that permits the USMS to enter into such contracts; the statute states:

> The rates to be paid for the care and custody of [federal prisoners] shall take into consideration the character of the quarters furnished, sanitary conditions and quality of subsistence and may be such as will permit and encourage the proper authorities to provide reasonably decent, sanitary and healthful quarters and subsistence for such persons. 18 U.S.C. § 4002.

> . . .

> Therefore, the court concludes that the decision to contract with the VPRJ to house, monitor, and provide medical care to federal prisoners falls within the discretionary function exception as it involves "administrative decisions grounded in social, economic, and political policy."

*Johnson v. United States*, No. Civ.A. 4:05CV40, 2006 WL 572312, at *5 (E.D.Va. Mar. 7, 2006) (additional citations omitted); *see also Bethea v. United States*, 465 F. Supp. 2d 575, 582 (D.S.C. 2006) (finding that 18 U.S.C. § 4086 "require[s] the safekeeping of prisoners" but does not "specify the method for such safekeeping. This court thus finds that the first part of the *Gaubert* test is

satisfied because the decision regarding where Bethea [sic] should be housed involved an element of judgment or choice . . . . This court finds the second part of the *Gaubert* test is satisfied. First, as this court interprets 18 U.S.C. § 4086 as implicitly conferring discretion on the USMS in making decisions regarding Bethea's [sic] safekeeping, it is presumed that the USMS's acts are grounded in policy. Secondly, even without the presumption, the decision of where to house an inmate is subject to public policy analysis") (citations omitted).[15]

Second, given plaintiff's theory of liability, he has failed to identify any analogous cause of action in New York State, which is where the alleged tort by the NCCC occurred, that exists against a private citizen. Here, the alleged conduct by the USMS, which plaintiff is attempting to argue creates tort liability, relates to conduct of a governmental function and has no analogous liability in the law of torts. Thus, jurisdiction is lacking on this ground because the United States has not waived immunity under the FTCA in such circumstances. *See, e.g.*, *Akutowicz v. United States*, 859 F.2d 1122, 1125 (2d Cir. 1988).

Third, the claims against the USMS are barred by the well-settled independent contractor exception to the United States'

---

[15] In support of this conclusion, the Court also finds persuasive the reasoning of other circuit courts that have concluded that the discretionary function applies to analogous situations of alleged negligence by the Bureau of Prisons ("BOP"), resulting in inmate-on-inmate attacks, pursuant to similar statutory language. *See Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("Statutory provisions vest the BOP with the task of providing for the protection and safekeeping of prisoners in very general terms. The BOP is broadly entrusted with "management and regulation of all Federal penal and correctional institutions." It is to provide for "the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States" and guarantee "the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042. As noted by the Eleventh Circuit, these provisions "do not mandate a specific, non-discretionary course of conduct," but rather leave the BOP "ample room for judgment.") (quoting *Cohen v. United States*, 151 F.3d 1338, 1344 (11th Cir. 1998), *cert. denied*, 526 U.S. 1130 (1999)); *Cohen*, 151 F.3d at 1343 ("In particular, the language granting the BOP authority to "designate any available penal or correctional facility . . . that the [BOP] determines to be appropriate and suitable," 18 U.S.C. § 3621(b), is indicative of Congress' intent to allow the BOP to rely on its own judgment in classifying prisoners and placing them in institutions."); *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997) ("While it is true that this statute sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty. The statute sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates. For Calderon's argument to be effective, he must demonstrate that § 4042 sets forth nondiscretionary actions which the BOP personnel were required to undertake to protect Calderon. As it currently stands, Calderon's argument is, in reality, a negligence argument and thus, must fail because it does not address the prerequisite jurisdictional issues of the discretionary function exception.") (citation omitted); *see also Webber v. Fed. Bureau of Prisons*, No.6:03-CV-079-C, 2005 WL 176122, *8 (N.D. Tex. Jan. 27, 2005) ("[D]ecisions with regard to classification of prisoners, assignment to particular institutions or units, and allocation of guards and correctional staff must be viewed as falling within the discretionary function exception to the FTCA").

waiver of sovereign immunity. Specifically, the Second Circuit has made clear that, in a suit under the FTCA, "where the United States is wholly without fault, the federal government may not be held liable for a negligent or wrongful act or omission of an independent contractor even where state law would impose liability in such instances." *Roditis v. United States*, 122 F.3d 108, 112 (2d Cir. 1997); *see also Flanagan v. United States*, 430 F. Supp. 2d 106, 112 (W.D.N.Y. 2006) ("Exceptions to government liability under the FTCA include the independent contractor exception and causes of action which allege government negligence based on claims of nondelegable duties or which sound in strict liability."); *Moody v. United States*, 753 F. Supp. 1042, 1056 (N.D.N.Y. 1990) ("the United States may not be held liable either for the negligence of its contractor's employees or for its own negligence in failing to supervise its contractor's safety compliance"). Here, it is clear from the complaint (and was confirmed with plaintiff at oral argument) that he is not claiming any fault or negligence on the part of any federal employee, but rather is simply attempting to hold the USMS vicariously liable for the alleged negligent acts of the NCCC. Such a claim is clearly barred by the independent-contractor exception. *See Acosta v. U.S. Marshals Service*, 445 F.3d 509, 514 (1st Cir. 2006) ("This [independent contractor] exemption excludes liability where the negligent treatment of a federal prisoner is the fault only of a non-federal facility holding the prisoner under contract with the Marshals Service.") (citations omitted); *Johnson v. United States*, 2006 WL 572312, at *3 ("Although the Supreme Court [in *Logue v. United States*, 412 U.S. 521, 528 (1973)] recognized that the United States has a duty to provide for the care of federal prisoners, the opinion highlighted the fact that the same

public law which created such duty also granted the Government the power to contract with state authorities to provide for the care and supervision of federal prisoners. *Id*. at 529; *see* 18 U.S.C. § 4002. Interpreting the text of 18 U.S.C. § 4002, the Court concluded that Congress 'rather clearly contemplated that the day-to-day operations of the contractor's facilities were to be in the hands of the contractor, with the Government's role limited to the payment of sufficiently high rates to induce the contractor to do a good job.'") (footnote omitted); *see also Cannon v. United States*, 645 F.2d 1128, 1142 (D.C. Cir. 1981) (applying *Logue* to a situation in which no contract existed between District of Columbia facility, where an inmate was stabbed by another inmate, and the federal government, and concluding that statutory and regulatory constraints operated like a contract to exclude federal government from liability for state facility's alleged negligence under the independent contractor exception).

### 3. Leave to Amend

Finally, Toomer has asked for leave to amend his complaint to file a claim under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), as part of his opposition papers to the USMS' motion to dismiss. The Court agrees with the USMS that plaintiff's request for leave to amend his complaint to assert a claim under *Bivens* should be denied as futile under the standard applicable to motions under Rule 12(b)(6), even when *pro se* plaintiff's complaints are construed broadly and all factual allegations are presumed to be true, for the purposes of this analysis. A proposed amendment will be considered futile if it is "clearly frivolous or advances a claim or defense that is clearly meritless." *Slavin v. Benson*, 493 F. Supp. 32, 33 (S.D.N.Y. 1980). If, however, the proposed amendment raises at

least colorable grounds for relief, leave to amend will be granted. *See Kaster v. Modification Sys., Inc.*, 731 F.2d 1014, 1018 (2d Cir. 1984); *S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir. 1979). In assessing whether the proposed amendment states colorable grounds for relief, the court is required to adopt the same analysis as applied on a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Silberblatt*, 608 F.2d at 42; *see also Hampton Bays Connections, Inc. v. Duffy*, 212 F.R.D. 119, 123 (E.D.N.Y. 2003); *Olumuyiwa v. Harvard Prot. Corp.*, No. 98 Civ. 5110 (JG), 1999 WL 529553, at *5 (E.D.N.Y. July 21, 1999).

In this case, as discussed above, the complaint merely alleges in conclusory language that the USMS has violated plaintiff's constitutional rights. However, it is clear from plaintiff's complaint and his other submissions that he is not alleging that any particular USMS official violated his constitutional rights in any manner. The alleged facts of this case have been consistently presented by plaintiff as involving the attack of a fellow inmate while in the custody of the NCCC. No federal officer is alleged to have been involved in supervising the custody of Toomer or failing to protect him from any possible attack. In fact, as noted above, the Court confirmed with plaintiff at oral argument, in discussing this request to amend, that he was making no claim of wrongful conduct as to any particular USMS employee (but rather simply believes that the USMS as a whole should be liable for the allegedly wrongful acts of the NCCC). Therefore, it is abundantly clear that no plausible *Bivens* claim could be alleged against any federal official for an alleged violation of plaintiff's constitutional rights

arising from an inmate fight at the NCCC. In sum, because Toomer simply fails to allege any facts to support a possible civil rights violation by any employee of the USMS, he is denied leave to amend his complaint to assert a cause of action under *Bivens*.

V. CONCLUSION

For the foregoing reasons, the County defendants' motion for summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, is granted. Defendant USMS's motion to dismiss plaintiff's claims, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, is also granted. Plaintiff's claims are dismissed in their entirety, with prejudice. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of the Court is directed to enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:     May 5, 2009
           Central Islip, NY

\* \* \*

Plaintiff is representing himself *pro se*. The attorney for the defendant is Brian C. Mitchell, Assistant County Attorney, Office of the Suffolk County Attorney, 100 Veterans Memorial Highway, P.O. Box 6100, Hauppauge, New York 11788.